UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| CONNIE DIANE HEMPHILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:14-CV-054-BG |
| ) | ECF |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Connie Diane Hemphill seeks judicial review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB). The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. Hemphill did not consent to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned now files this Report and Recommendation recommending that the case be reversed and remanded.

**I.    Statement of the Case**

Hemphill protectively filed an application for DIB on January 31, 2012. The Commissioner initially denied her DIB application, and it was denied again upon reconsideration on August 27, 2012. Hemphill subsequently requested a hearing, and pursuant to her request, an administrative law judge (ALJ) conducted a hearing on July 10, 2013. Hemphill and a vocational expert testified at the hearing; Hemphill was represented by an attorney. The ALJ determined on August 29, 2013, that Hemphill was not disabled because she could perform jobs that exist in significant numbers in the national economy. The Appeals Council denied review on March 25, 2014. Following denial of a

request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a claimant's request for review).

## II. Factual Background

Hemphill claims that she became disabled on December 15, 2010, due to generalized anxiety disorder, major depressive disorder, Meniere's disease[1], and vertigo. (Tr. 31, 33.) She claims that because of her anxiety and depression, she sleeps much of the day, and has vertigo and dizzy spells due to her Meniere's Disease, making it difficult for her to work. (Tr. 53, 56.) She takes several medications including alprazolam, hydrochlorothiazide, levothyroxine, paroxetine hydrochloride, and Vesicare. (Tr. 138.) She has a ninth grade education; she last worked in 2010 as a manager at an automated car wash; and she previously worked as a cook in a diner. (Tr. 48, 142.) She lives with her husband, who primarily takes care of the household chores. (Tr. 78, 410.)

## III. Standard of Review

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2014); *see e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Without reweighing

---

[1] Meniere's disease is an "affection characterized clinically by vertigo, nausea, vomiting, tinnitus, and fluctuating and progressive sensory hearing loss associated with endolymphatic hydrops. *Stedman's Medical Dictionary* 561 (28th ed. 2006).

the evidence or substituting its own judgment, a reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

## IV. Discussion

Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In making a disability determination, the Commissioner conducts a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) whether the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 404.1520(a)(4) (2014). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

At the first four steps in the analysis, the claimant bears the burden of proof. *Id.* Once this burden is satisfied, the Commissioner bears the burden of showing the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See*

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

In this case, the ALJ determined: (1) Hemphill was not engaged in substantial gainful activity during the period of her alleged onset disability date through her date of last insured; (2) Hemphill's impairments of generalized anxiety disorder and major depressive disorder were severe in nature, but her impairments of Meniere's disease and vertigo were not severe in nature; and (3) Hemphill did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 16.) Following step three, the ALJ assessed her residual functional capacity (RFC) and found that she had the RFC to perform a full range of work with the following nonexertional limitations: she could carry out non-complex instructions, and she would not work well with the general public. (Tr. 33–36.)

At step four, the ALJ found that Hemphill could not return to her past relevant work. (Tr. 37.) After considering testimony from a vocational expert and Hemphill's RFC, age, education, and work experience, the ALJ concluded at step five—using the Medical-Vocational Guidelines as a framework—that Hemphill was capable of performing other jobs that exist in significant numbers in the national economy. (Tr. 37–38.) Hemphill argues on appeal that the ALJ erred by (1) failing to find that her impairments of Meniere's disease and vertigo are severe; and (2) posing a defective hypothetical question to the vocational expert. Pl.'s Br. 18, 22.

> **A.    The ALJ's finding that Hemphill's impairments of Meniere's disease and vertigo are not severe is supported by substantial evidence.**

Hemphill argues that the ALJ should have found that her Meniere's disease and her vertigo were severe impairments under the Social Security Act (Act) and the *Stone* standard. The Act provides that at step two of the evaluation process, the ALJ must determine "whether the claimant has an impairment or combination of impairments which is 'severe.'" 20 C.F.R. § 404.1520(c). An

4

impairment is considered "severe" if it "significantly limits an individual's physical or mental ability to meet the basic demands of work activity." *Id.* In *Stone v. Heckler*, the Fifth Circuit interpreted the Act's definition of severe as follows:

> "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). "An impairment causing *any* interference with work ability, even minimal interference, is a severe impairment under *Stone*." *Morris v. Astrue*, 4:11-CV-631-Y, 2012 WL 4466144, at *1 (N.D. Tex. Sept. 27, 2012). To ensure the ALJ applies the proper standard, the ALJ is required to cite to the *Stone* standard, though the ALJ is not required to use "magic words." *See Stone*, 752 F.2d at 1106; *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

At the outset, the court notes that the ALJ applied the proper legal standard in this case. He stated that Hemphill "has a history of Meniere's Disease and vertigo," but he found that those "impairments were only slight abnormalities having such a minimal effect on [Hemphill] that they would not have been expected to interfere with her ability to work prior to her date last insured." (Tr. 33.) The ALJ's language mirrors the legal standard in *Stone*. *See Stone*, 752 F.2d at 1101.

Hemphill's argument does not require reversal. A severity finding at step two of the sequential evaluation process is a threshold assessment that allows ALJ to dismiss a claim without further evaluation. 20 C.F.R. § 404.1520(a)(4)(ii); *see Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992) (noting that the Commissioner may use the "severity regulation" to dispose of claims at an early stage of the sequential evaluation process). Where the ALJ determines that a claimant can work at the fourth or fifth step of the sequential evaluation process, a finding that a specific

impairment is not severe does not require remand. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (concluding that case did not require remand where ALJ made a finding of non-severity because the ALJ found the claimant disabled at step four rather than step two of the sequential evaluation).

The ALJ in this case acknowledged Hemphill's impairments of Meniere's disease and vertigo but determined that they were not severe. However, the ALJ's finding that Hemphill's impairments of Meniere's Disease and vertigo were not severe did not end the disability inquiry. Instead, the ALJ assessed Hemphill's residual functional capacity (RFC) and determined that she was not disabled at step five of the sequential evaluation because she could perform jobs that existed in significant numbers in the national economy. (Tr. 38.)

Moreover, the ALJ's determination that Hemphill's impairments of Meniere's disease and vertigo are not severe is supported by substantial evidence. The ALJ explained that he reviewed the records—including Hemphill's medical records and the report of the state agency examiner—and he found her impairments to be non-severe. (Tr. 34.) The fact that Hemphill may have been diagnosed with or suffered from these impairments does not compel the decision that they are severe impairments. In sum, the ALJ's decision on this issue is supported by substantial evidence.

    **B.**    **The ALJ erred by failing to impose limitations related to Hemphill's Meniere's disease and vertigo.**

Hemphill next claims that the ALJ erred by posing a defective hypothetical question to the vocational expert (VE). Pl.'s Br. 22. Specifically, she contends that the ALJ erred by according great weight to the state agency physician's assessment in determining her RFC. And by relying on the state agency physician's report in determining her RFC, Hemphill argues that the ALJ posed an improper hypothetical question to the VE and specifically erred in failing to include limitations

6

posed by Hemphill's Meniere's disease and vertigo. Pl.'s Br. 24–27.

The Commissioner contends that the ALJ need not incorporate functional limitations unsupported by the record. Def.'s Br. 9. The record reveals, however, that Hemphill has a history of ear problems and dizziness related to her ear problems. (Tr. 209–63.) On May 5, 2006, Hemphill was examined at the Levelland Clinic for complaints of pain behind her ears and chronic vertigo. (Tr. 256–57). The doctor noted she had bulging tympanic membranes (TMs), diagnosed her symptoms as possible Meniere's Disease, and referred her to Dr. Ward, an ear, nose, and throat specialist. (Tr. 256–57.) Dr. Ward subsequently examined Hemphill, and opined that she suffered from "cochlear hydrops"—excess fluid in the ears. (Tr. 210.) An auditory exam revealed bilateral low frequency hearing loss. (Tr. 209.) Dr. Ward prescribed various medications, recommended dietary changes to help with symptoms, and advised Hemphill to undergo an MRI to rule out a tumor; the MRI did not reveal anything remarkable. (Tr. 210–12.)

Hemphill continued to periodically visit the doctor's office for complaints of ear problems, among other symptoms. Her doctors repeatedly noted that she had bulging TMs. (Tr. 218, 239, 244, 262.) In February 2012, Hemphill was again seen at the Levelland Clinic for complaints of general pain. The doctor noted she had bulging TMs, and he increased her prescription for hydrochlorothiazide—a water pill used to decrease fluid in the body—to 25 milligrams. (Tr. 213–15.) And in May 2012, after Hemphill's date of last insured, she was examined by Dr. Lincoln, a neuro-psychologist. At that appointment, Hemphill reported that she experienced dizziness and sweating one to two days per week. (Tr. 269.) She also reported that she had taken meclizine, a medicine used to treat dizziness, in the past, but she no longer took it because her doctor believed it might have contributed to her panic attacks. (*Id.*)

Although the ALJ concluded that "there was no medical opinion from any medical source indicating the claimant was entirely incapable of working prior to her date of last insured," he did not consider what, if any, exertional or non-exertional limitations should have been imposed related to Hemphill's impairments of Meniere's disease and vertigo. (Tr. 37.) *See* SSR 96-8p, 1996 WL 374184, at *5 (explaining that the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe' because the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do"). By relying on the state agency physician's report to determine Hemphill's limitations, the ALJ failed to consider how the limitations imposed by Hemphill's physical impairments would affect her ability to perform basic work activities. When assessing a claimant's RFC, the adjudicator must "consider all allegations of physical and mental limitations or restrictions"—even those the ALJ considered non-severe. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(e). Indeed, the ALJ must consider the limiting effects of *all* of claimant's impairments, even those that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(e).

After considering the record, the undersigned finds that the ALJ's determination that Hemphill was capable of performing all levels of work without any exertional or non-exertional limitations related to her impairments of Meniere's disease and vertigo is not supported by substantial evidence. The regulations explain that "Meniere's disease is characterized by paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss. Remissions are unpredictable and irregular, but may be longlasting; hence, the severity of impairment is best determined after prolonged observation and serial reexaminations." 20 C.F.R. Part 404, Subpt. P, App. 1. Despite

acknowledging that Hemphill had some dizzy spells, the ALJ determined that Hemphill "had no exertional limitations secondary to her physical impairments . . . ." (Tr. 37.) And the state agency physician's report—to which the ALJ afforded significant weight—acknowledged that there were "no vestibular test[s] in file except for Dix-Hallpike, which was negative." (Tr. 292–98.) Nor did the state agency physician physically examine Hemphill.

Hemphill testified at the hearing that she takes a water pill specifically for excess fluid in her ears. (Tr. 59, 213–15.) Moreover, Hemphill testified that she experiences dizziness almost every day, and she experiences a "spinning sensation" with vertigo and the vertigo comes and goes. (Tr. 56–58.) Hemphill also testified that after she experiences dizziness, it takes between one and three hours to recover, and she must lie down to recover. (Tr. 58.) When Hemphill's attorney questioned the VE regarding jobs a person suffering from unexpected dizziness or vertigo could perform, the VE responded that the person would need "special accommodation." (Tr. 66.)

In sum, the record shows that the ALJ's failure to consider limitations—including exertional and non-exertional—related to Hemphill's impairments of Meniere's disease and vertigo prejudiced her. Where the ALJ could have obtained evidence that might have changed the result—"specifically, an expert medical opinion about the types of work tasks that Plaintiff could still perform given [her] impairments"—reversal and remand is required. *Stoll v. Colvin*, No. 3:14-CV-1239-N, 2015 WL 233312, at *7 (N.D. Tex. Jan. 16, 2015); *see also Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir 2000) (explaining that an ALJ's decision will not be reversed unless the claimant shows that she was prejudiced by the ALJ's decision). For this reason, substantial evidence does not support the ALJ's RFC determination and his finding of a lack of exertional and non-exertional limitations related to Hemphill's Meniere's disease and vertigo. The case should be remanded for further administrative

proceedings to consider any exertional and non-exertional limitations with respect to Hemphill's impairments of Meniere's disease and vertigo and whether there are any jobs in the economy that can be performed by a claimant with such conditions.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court reverse the Commissioner's decision and remand this case for further administrative proceedings.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to timely file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February 20, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge